**Vermont State Colleges Faculty Federation, VFT, AFT, Local No. 3180, AFL–CIO v. Vermont State Colleges**

[446 A.2d 347]

No. 58-81

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed April 6, 1982

*Michael 'Schein* of *Hoff, Wilson, Powell & Lang, P.C.,* Burlington, for Plaintiff.

*Paul K. Sutherland* of *Doremus, Congleton & Jenkins,* Essex Junction, and *Arthur P. Menard* of *Morgan, Brown, Kearns & Joy,* Boston, Massachusetts, for Defendant.

**Peck, J.** During the course of collective bargaining looking toward a labor agreement to be effective upon expiration of its predecessor, the Vermont State Colleges (Colleges) and the

Vermont State Colleges Faculty Federation (Union), the exclusive bargaining representative of all full-time faculty and ranked librarians at the Colleges, negotiated a management rights article for inclusion in the agreement when finalized.

This article, which is similar, if not identical, to the management rights article contained in the predecessor (1979–1980) agreement, reads in its pertinent parts as follows:

> A. All the rights and responsibilities of the Vermont State Colleges, which have not been specifically provided for in the Agreement, shall be retained in the sole discretion of the Vermont State Colleges and, *except as modified by this Agreement*, such rights and responsibilities shall include but shall not be limited to:
>
> 1. The right to direct employees; to determine qualifications and criteria in hiring, promotional, tenure, and layoff situations *to be applied in conformance with provisions of this Agreement;* . . . to hire, reappoint, promote, grant tenure, assign and retain employees in position . . . . (Emphasis added.)

On August 8, 1980, during the existence of the predecessor agreement, the Vermont State Colleges Board of Trustees adopted and promulgated a policy statement (policy) providing, *inter alia*, certain criteria for appointment, reappointment, promotion and tenure. The policy established a ten-year staffing plan which included limits on the number of faculty promoted and granted tenure.

Following the acceptance by both parties of the management rights article, the Union requested the Colleges to bargain the provisions of the policy, most notably promotion and tenure. When the Colleges declined to bargain, the Union filed unfair labor practice charges with the State Labor Relations Board (Board) against the Colleges, alleging, in substance, a refusal to negotiate matters which are the proper subjects for bargaining under Vermont law. The Board issued a pro forma complaint based on the charges, and heard the matter on October 30, 1980. The Board's opinion and its order, dated December 18, 1980, were amended upon motion of the Colleges, on January 23, 1981 (the findings remained unchanged). The amended order directed the Colleges to cease and desist from refusing to bargain the matters at issue, and

to bargain collectively in good faith with the Union "regarding promotion and tenure for the agreement succeeding the 1979–1980 Agreement." The Colleges brought an appeal to this Court.

In its amended opinion, the Board recognized that under the agreement then in effect, including the management rights article, the Colleges had the right to adopt and implement the policy.

The Colleges argue that since its promotion and tenure policy was properly issued pursuant to the management rights article contained in the agreement in effect at that time, and since the negotiated article for the new (1981) agreement was substantially similar, the obligation to bargain management rights had been fulfilled. Put another way, the Colleges contend that the Board erred in finding an unlawful refusal to bargain when the Colleges did in fact bargain, fully and meaningfully, a broad management rights article substantially similar to its predecessor article. We disagree with the Colleges' position and affirm the order of the Board for reasons discussed in this opinion.

■ It is perhaps unnecessary to point out that regardless of the obligation of the Colleges to bargain on proposals relating to the policy, if such proposals are submitted to it by the Union, neither party can be compelled to agree or accede to any proposals of the other or to make any concessions. 3 V.S.A. §§ 981, 982(b). We require only that whatever proposals the Union may submit concerning the Colleges' policy be bargained in good faith. Otherwise the policy is a *fait accompli;* it constitutes a management right, subject to modification only as the parties may agree.

We note first that except as a matter of historical interest, establishing the document under the provisions of which the policy was first promulgated, the 1979–1980 agreement is not relevant to this inquiry. Especially is this so since the Board concluded, and it is not disputed, that the policy was properly adopted under the management rights article of the earlier agreement.

■ But the new agreement being negotiated when the present controversy erupted cannot be controlled by the dead hand of its predecessor. The Colleges' policy was in place, it

existed, and its proper birth and existence is not questioned. The only question to be resolved here is whether, under the new management rights article the provisions of the policy, or any of them, are subject to bargaining at the request of the Union; we conclude that they are.

■■ In reaching our conclusion of bargainability, we agree with the Union and the Board that the prime fallacy in the Colleges' argument lies in its failure to give any meaning to certain language contained in the new management rights article. A contract, like statutes and other writings, must be interpreted by the common meaning of its words where the language is clear. *Karlen Communications, Inc.* v. *Mt. Mansfield Television, Inc.*, 139 Vt. 615, 617, 433 A.2d 290, 292 (1981); *In re Stacey*, 138 Vt. 68, 71, 411 A.2d 1359, 1361 (1980). Moreover, contracts are to be construed, if possible, so as to give effect to every material part. *In re Vermont State Employees' Association*, 139 Vt. 63, 65, 421 A.2d 1311, 1312 (1980); *Cross-Abbott Co.* v. *Howard's, Inc.*, 124 Vt. 439, 441, 207 A.2d 134, 137 (1965).

■■ Reading the management rights article under examination here in the light of the rules of construction cited above, one decisive factor emerges. In referring to the rights of management, and we hold that under the facts presented here promotion, tenure, and other provisions of the policy fall within the scope of such rights, the article provides that these rights "shall be retained . . . *except* as modified by *this* Agreement." (Emphasis added.) This means, simply, that whatever management rights existed at the time negotiations commenced shall continue to exist, *unless and until* modified through collective bargaining.

■ The position taken by the Colleges leaves the words of the language quoted above, beginning with the word "except," totally meaningless and without effect. We must bear in mind that when this rights article was finalized, the entire contract had not been completed; bargaining was still in progress. Therefore, giving effect and meaning to the qualifying language, it was impossible to determine whether the full, final agreement would contain a modification of the particular rights represented by the Colleges' policy. The article

was made by the parties themselves, expressly, *subject to* whatever other provisions might thereafter be bargained for inclusion in the full and final agreement. The law will presume that the parties meant, and intended to be bound by, the plain and express language of their undertakings. *Clark* v. *Lillie*, 39 Vt. 405, 411 (1867). It is the duty of this Court to construe contracts; we will neither make or remake them for the parties, nor will we ignore their provisions. *In re Vermont State Employees' Association, supra*, 139 Vt. at 65, 421 A.2d at 1312. We must enforce contracts as they are written. *Medlar* v. *Aetna Insurance Co.*, 127 Vt. 337, 347, 248 A.2d 740, 747 (1968).

We conclude that the Colleges are obligated to bargain collectively on such proposals as the Union may submit in relation to promotion, tenure and other provisions of the policy. These provisions are a proper subject for collective bargaining; neither party challenges this seriously. It is a matter relating to the employer-employee relationship, 3 V.S.A. § 904, and is not prescribed or controlled by statute.

*Affirmed.*